THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JUSTILIANO BÁEZ, Defendant and Appellant.

No. CR-71-52.     Decided May 4, 1972.

*Enrique Miranda Merced* for appellant. *Gilberto Gierbolini, Solicitor General,* and *Roberto Armstrong, Jr., Assistant Solicitor General,* for The People.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

The appellant, an illiterate laborer residing in Jauca parcels of Santa Isabel, was sentenced to pay a fine of $500, or in default thereof to serve one day in jail for each dollar left unpaid but not to exceed the subsidiary imprisonment of

90 days for a violation of § 4 of Act No. 87 of June 22, 1962 (29 L.P.R.A. § 530).

In view of the fact that a great number of our workers go abroad to the United States and elsewhere, in search of working opportunities, the Department of Labor of the Commonwealth of Puerto Rico has been developing norms for the maximum protection of such workers, especially agricultural workers. The endeavors of said Department toward the protection of Puerto Rican workers were being tripped up by the inconvenience presented by the employers and agents who attempt to circumvent the law and the norms established by the Department of Labor by recruiting workers and taking them to the United States to work without a contract affording them the proper guarantee. This made it necessary to approve a law to regulate the contracting for workers whose services are to be rendered outside of Puerto Rico, to adjust such contracting to the needs which have been apparent in the administration of the program aimed at affording full guarantees and maximum protection to emigrant workers.[1]

Because of such considerations, Act No. 87 of June 22, 1962, was approved. Said Act granted the Secretary of Labor authority to intervene, personally or through his agents, in all matters concerning the contracting for workers whose services are to be used outside of Puerto Rico. Section 1.

In its § 2 it imposed on every person, organization or agent intending, himself or by any means, to recruit and contract laborers to work anywhere outside of Puerto Rico, the obligation to get in touch with the the Secretary of Labor and acquaint him, through the formularies furnished for the purpose, with all the details listed in said § 2, and in its § 3 it imposes upon them the obligation to execute in writing a contract with the persons to be employed, which contract shall contain the maximum guarantees fixed by the Secretary

---

[1] Statement of Motives of Act No. 87 of June 22, 1962.

of Labor through regulation, and shall be approved by said officer.

Section 4, for the violation of which appellant was condemned, provides:

"Section 4.—It shall be unlawful, on the part of any person or organization or its agents, to recruit and/or transport laborers to work outside of Puerto Rico without due authorization of the Secretary or his authorized representative. For the purposes of this section, 'transportation' shall mean any act consisting of an attempt *or inducement to obtain, or to deliver, fare tickets in any public carrier for any person within the limits of Puerto Rico,* to go abroad to work; as well as the physical transportation of laborers knowing that the latter are going to work outside of Puerto Rico without due authorization." (Italics ours.)

To sustain the information the prosecuting attorney introduced the testimonies of Gregorio Rodríguez Norat and Germán Santiago.

The first one of them, Gregorio Rodríguez Norat, testified, in synthesis, in the direct examination, that he lives in Jauca Ward; that on the night of June 15, 1969, he was at the San Juan airport because he was going to the United States to work and that he had a fare ticket. That fare ticket and $25.00 was given to him at his house by defendant Justo Báez and he told him that the place where he was going to work was "Glassborough," that upon delivering him the fare ticket he asked him if he wanted to work to which he answered yes, that he needed to go to work, that he paid $5.00 for his fare in a car to the airport.

On cross-examination he testified that he is illiterate; that the defendant lives in the same ward of Jauca and that he also is illiterate; that he does not know Luis López García nor Virgilio Rivera; that never before had he gone to work outside of Puerto Rico; that when defendant delivered him the fare ticket he told him that Virgilio Rivera had given it to him to deliver it to him [the witness]; that he knew that

there were some 16 of them who were going to work; that the defendant told him that Virgilio Rivera gave them to him to deliver them [the tickets] to them; that the first ones to go were five and later on five more were going.

German Santiago testified in synthesis, that he lives in Jauca Ward of Santa Isabel; that at midnight on June 15, 1969, he was at the airport with four other persons, among them the defendant because they were all going to work in New Jersey; that the one who talked to him to go to work was the defendant. The prosecuting attorney asked him how it was that they delivered him the fare ticket, to which he answered:

"He told me that there was a man who had gotten a fare ticket, I do not know him, I told him, 'try to get me one, I am unemployed and want to work,' he told me that in case the man gave him the fare tickets and I told him to try to get it."

To the question of the prosecuting attorney that if Justiliano was going to talk with the man who was going to get the fare ticket, he answered: "Aha, I told him that since I did not know the man to try to get it for me, since I was unemployed and wanted to work and to send the fare ticket to my house." He testified that in addition to the fare ticket they gave him $25; that among the ones that were going away to work was the defendant; that he does not know Virgilio Rivera nor Luis López García; that he does not have a contract with any agency in Salinas to pay the fare ticket; that they were going to pay the fare ticket by means of the work as it was informed to Justiliano by the man who gave him the fare ticket.

Two witnesses testified for the defense and said that they knew the defendant as an agricultural worker but not as group leader, "those men who dedicate themselves to collect workers, take workers to certain farms. . . ."

The defendant himself testified that he has been a sugarcane cutter all his life and that also he works in any other

agricultural chore; that he is illiterate. When the judge asked him about the question of the fare tickets, he testified: "JUDGE:

How was the matter? .

The matter with respect to those tickets is that they were sent to Luis López García; then he was abroad and he sent the letter to his father-in-law, Virgilio Rivera, upon sending it he went to the area to have a meeting with the ones he was going to send, I was among the recruits. He gave me a ticket then, and with me he sent a ticket to this guy, he told me, 'take this ticket to so-and-so,' since I knew him I took the ticket to him. . . . I am innocent, I was going to work because I was unemployed and so I went alone to the airport; I do not know anything of letters, I do not know anything.

MR. VIERA:

So that, Don Justo, you as well as Gregorio Norat and Germán were going to do the same?

Yes, the same thing, they gave me that ticket and twenty-five dollars.

Who gave you that ticket?

Mr. Virgilio Rivera who was the one who distributed them. And how were those tickets bought?

I do not know how those tickets were bought, they got them in Salinas, he got them in Salinas.

PROSECUTING ATTORNEY MÉNDEZ:

How is it?

Virgilio Rivera got those tickets in Salinas, he said that they were sent to Luis López, then, Luis López sent them to his father-in-law.

MR. VIERA:

And the check was for your fare ticket or the rest of the persons?

For 16, one thousand two hundred dollars." (Tr. Ev. pp. 41–42.)

On cross-examination he denied having told before to the prosecuting attorney that he was going to work with Mr. George; he admitted that Mr. George had been here and that personally Mr. George took 5 workers with him. He testified

also that he did not go to Salinas or any other place to buy the tickets.

We have already seen that § 4, allegedly violated by appellant, declares that it is unlawful, on the part of any person or organization or its agents, to recruit and/or transport laborers to work outside of Puerto Rico without due authorization of the Secretary of Labor or his authorized representative. The evidence does not show beyond a reasonable doubt that appellant recruited the workers Gregorio Rodríguez Norat and Germán Santiago to work outside of Puerto Rico. Appellant's explanation with respect to how said workers received the fare tickets is not produced for the first time at the trial; Rodríguez Norat testified that when appellant gave him the ticket and the $25 he said that Virgilio Rivera had given them to him for him to deliver them to him. As to the other worker, Germán Santiago, it is inferred from his own testimony, that having found out that a group of workers was going to the United States, he asked appellant to try to get him a ticket since he did not know the person in charge of distributing and delivering them. Appellant's action to those effects cannot be considered, in the light of the purposes contemplated by Act No. 87, as an act of recruitment.

■ For the purposes of § 4, "transportation" shall mean "any act consisting of an attempt or inducement to obtain, or to deliver, fare tickets in any public carrier for any person within the limits of Puerto Rico, to go abroad to work, . . . ."

■ The evidence as a whole shows that it was Virgilio Rivera who attempted and induced to obtain or to deliver the fare tickets to the two workers mentioned in the information and to 14 other workers. Appellant was the means which he used to deliver the tickets. Appellant's action consisting only in delivering a ticket to Gregorio Rodríguez, by commission of Virgilio Rivera and of requesting from the latter a ticket for Germán Santiago by commission and petition of Santiago himself, should not be considered to fall within the definition

of "transportation" contained in the aforementioned § 4 of Act No. 87.

For the foregoing reasons the judgment appealed from should be reversed and defendant-appellant acquitted.

Mr. Chief Justice Negrón Fernández took no part in this decision. Mr. Justice Ramírez Bages, with whom Mr. Justice Martínez Muñoz concurs, dissented in a separate opinion.

—O—

MR. JUSTICE RAMÍREZ BAGES, with whom MR. JUSTICE MARTÍNEZ MUÑOZ concurs, dissenting.

San Juan, Puerto Rico, May 4, 1972

I dissent for understanding that, irrespective of the fact that appellant was illiterate and an agricultural worker, he violated the provisions of § 4 of Act No. 87 of June 22, 1962 (29 L.P.R.A. § 530), upon delivering fare tickets to the two witnesses for the prosecution within the limits of Puerto Rico, to go abroad to work. The evidence shows that he was not a mere messenger of Virgilio Rivera, but that, without authorization from the Secretary of Labor, he recruited laborers to work outside of Puerto Rico and, for those purposes, he asked the witnesses for the prosecution if they wanted to go to work outside of Puerto Rico; that he could get them the fare tickets. Upon the latter answering yes, he obtained the tickets from the said Rivera and delivered them to them informing them about the manner of reimbursing the cost of the ticket and the place where they were going to work.

On the basis of the evidence adduced in this case, the trial judge had grounds to conclude beyond a reasonable doubt that appellant was guilty of the offense charged against him. For such reason, I believe that the conviction should have been upheld.